**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LUKE HOGAN, on behalf of himself and** | § | |
| **other individuals similarly situated,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 3:20-cv-02899-X** |
| **vs.** | § | |
| | § | |
| **SOUTHERN METHODIST UNIVERSITY** | § | |
| **and other affiliated entities and individuals,** | § | |
| | § | |
| **Defendants** | § | |

**PLAINTIFF'S FIRST AMENDED CLASS ACTION PETITION AND JURY DEMAND**

Named Plaintiff Luke Hogan (hereinafter "Plaintiff"), by and through the undersigned counsel, brings this class action against Defendant Southern Methodist University ("SMU," the "University," or "Defendant") individually and on behalf of all others similarly situated, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge.

**NATURE OF THE ACTION**

1.      This class action is brought on behalf of Named Plaintiff Luke Hogan and those similarly situated who paid tuition and fees for the Spring 2020 semester at Southern Methodist University ("University" or "SMU") and had their course work moved to online only learning and failed to receive the services for which they paid fees. As a result of Defendant's response to the Novel Coronavirus Disease 2019 ("COVID-19"), Plaintiffs did not receive the benefits and services that they bargained for when they provided payment for tuition and fees.

2.      Students, like Plaintiff, were required to pay tuition for the Spring 2020 semester to

1

attend SMU, including a typical tuition price of approximately $25,000.00 for undergraduate students and a mandatory general student fee ("Mandatory Fee") of approximately $3,180.00. Additionally, students were also charged various course fees depending on class schedule.

3.      SMU has not refunded any amount of the tuition or any of the fees even though it canceled in-person classes on or around March 12, 2020 and began the transition to online only learning.

4.      Because of the University's response to the COVID-19 pandemic, on or about March 12, 2020, the University also stopped providing services or facilities that the Mandatory Fees were intended to cover.

5.      According to a public release on March 12, 2020, Defendant announced "Due to rapidly changing issues related to the spread of Coronavirus, SMU will move students from classrooms to online instruction for the first two weeks following Spring Break, beginning Monday, March 23.  The University is requesting that as many students as is possible leave the residence halls during Spring Break and remain home until April 5, as we expect normal operations to resume on April 6."[1]  In a follow up release on March 20, 2020, Defendant announced that all classes would continue online only for the remainder of the Spring 2020 semester.[2]

6.       The University's failure to provide the services for which tuition and the Mandatory Fee were intended to cover since approximately March 12, constitutes a breach of the contracts between the University and Plaintiff and the members of the Class and is unjust.

7.      In short, Plaintiff and the members of the Class have all paid for tuition for a first-rate education and on-campus, in person educational experiences, with all the appurtenant benefits

---

[1] https://web.archive.org/web/20200422040219/https://blog.smu.edu/coronavirus-covid-19/2020/03/12/smu-will-move-students-from-classrooms-to-online-instruction-for-the-first-two-weeks-following-spring-break/.
[2] https://web.archive.org/web/20200422040225/https://blog.smu.edu/coronavirus-covid-19/2020/03/20/smu-classes-move-online-through-end-of-spring-semester/.

offered by a first-rate university. Instead, students like Plaintiff were provided a materially different alternative, which constitutes a breach of the contracts entered into by Plaintiff with the University.

8.     In the alternative, Defendant's retention of funds without providing those services is unjust.

9.     As to the Mandatory Fee, Plaintiff and the Class have paid fees for services and facilities that were simply not provided. This failure also constitutes a breach of the contracts entered into by Plaintiff with SMU.

10.     Plaintiff and the Class have been deprived of access to these facilities and services as a result of Defendant's response to the Coronavirus. This failure also constitutes a breach of the contracts entered into by Plaintiff with Defendant.

11.     In the alternative, the retention of these fees without providing these services is unjust.

12.     Rather than offer partial refunds, credits, or discounts to students like Plaintiff and the Class and balance the financial difficulties associated with COVID-19, Defendant has instead elected to place the financial burden entirely upon its students by charging them full tuition and fees when the services SMU provided were not the full educational opportunities, experiences, and services that Plaintiff and the Class agreed to.

13.     Plaintiff does not challenge Defendant's compliance with the COVID-19 orders that were in place in Texas.

14.     Plaintiff does not assert a claim for educational malpractice and does not challenge the substance of the education provided by SMU.  Plaintiff does not challenge the content of class curricula, the selection of content that was taught in SMU classes or any other purely academic

3

decisions made by SMU.

15.    Rather, Plaintiff challenges Defendant's decision to retain monies paid by students like Plaintiff and refuse to offer any refunds, provide any discounts, or apply any credit to Plaintiff and Class members' accounts when Defendant failed to provide the in-person and on-campus services that were contracted for, agreed to, and paid for.

16.    Plaintiff seeks, for himself and the Class members, the University's disgorgement and return of the pro-rated portion of its tuition and Mandatory Fees, proportionate to the amount of time in the respective semesters when the University closed and switched to online-only learning.  The return of such amounts would compensate Plaintiff and the Class members for damages sustained by way of Defendant's breach.

17.    Plaintiff seeks for himself and the Class members protections including injunctive and declaratory relief protecting Class Members from paying the full cost of tuition and Mandatory Fees during the pendency of the pandemic in light of the educational services, opportunities, and experiences Defendant can actually safely provide.

18.    Plaintiff and members of the Class are entitled to a pro-rated refund of tuition and Mandatory Fees for the duration of Defendant's COVID-19 related closures for the in-person education and on-campus services and opportunities that Plaintiff and members of the Class have been denied.

## FACTS

19.    Plaintiff and Class Members are individuals that paid tuition and fees to attend the Spring Semester 2020 at Southern Methodist University – after previously applying to the school, being admitted to the school, enrolling in and registering for classes.

20.    Based on the academic schedule, the Spring 2020 semester at Southern Methodist

4

University commenced on or around Jan. 17, 2020 and it was scheduled to conclude on or around May 16, 2020.

21.     Tuition at SMU was approximately $25,000.00 for undergraduate students and a mandatory general student fee ("Mandatory Fee") of approximately $3,180.00. Additionally, students were also charged various course fees depending on class schedule.

22.     SMU's "Find Courses" portal specifically offers students the option to search for classes based on "Location" which includes options for "Dallas (Main Campus)," "Abroad," "Online," & "SMU-in- Taos."[3]

23.     Plaintiff and the members of the Class chose classes that were offered on the physical campuses of SMU, and they paid tuition for and reasonably expected to receive the benefit of on-campus live interactive instruction and an on-campus educational experience throughout the semester.

24.     Plaintiff and SMU entered into a contractual agreement where Plaintiff would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services.

25.     The terms of the contractual agreement were set forth in the publications, documents, and materials provided to Plaintiff from SMU, throughout the application process, the admissions process, the enrollment process, the registration process, and the payment process - including, but not limited to: SMU's website, marketing materials, the application for admission submitted by Plaintiff and Class Members, the acceptance letters received by Plaintiff and Class Members, the registration materials, the course catalog, course listings, the bills/invoices, the student handbook, orientation materials and other materials that were provided to the Plaintiff and

---

[3] https://www.smu.edu/Provost/ProvostOffice/CIP/UndergraduateCurriculum/Common-Curriculum/Courses.

the Class conveying the educational services that Defendant was offering to provide.

26.     Prior to Plaintiff's enrollment, SMU highlighted in marketing materials, advertisements, and other documents that in-person educational opportunities, experiences, and services were intrinsic aspects of the educational experience provided to students.

27.     Defendant offered these services to Plaintiff in exchange for payment of tuition and fees during various semesters during his enrollment, including the Spring 2020 semester.

28.     Plaintiff made payments to Defendant based on promises made by SMU in those documents in lieu of receiving education at other universities or academic institutions – or enrolling in online-only universities for less tuition and fees.

29.     Defendant priced the cost of tuition based on the assumption of a full term of in-person learning.

30.     Upon information and belief, Defendant priced the Mandatory Fee based on the amount of services that students like Plaintiff would receive via in-person access to campus services and facilities.

31.     On or around March 12, 2020, Southern Methodist University announced that because of COVID-19, they would suspend and cancel all in-person classes and college experiences for the remainder of the Spring Semester 2020 (following Spring Break recess) and that all learning would transition to online beginning on or around March 26, 2020.

32.     Defendants were unable to provide in-person educational experiences, services, and opportunities for approximately 59% of the Spring 2020 semester. Including services for which the Mandatory Fee was assessed, such as SMU's health and wellness facilities, programs or services, fitness facilities, student events or sports, and an in-person commencement.

33.     As a result of Defendant's response to the Coronavirus, Plaintiff and the Class were

denied access to such facilities, services, and technology despite paying the Mandatory Fee.

34.     On its website and in its documents, SMU markets the University's on-campus experience and opportunities as an intrinsic benefit for which the students bargained and reasonably expected to receive. On its "Student Affairs" page SMU states, "We do things differently on the Hilltop; housing is just one of them. We don't do dorms or residence halls like most universities. We offer a ***one of a kind experience*** in our Residential Commons."[4] Defendant continued further by touting its "close-knit community" that is part of its education experience.[5]

35.     Defendant further promises a rare educational experience stating, "SMU's strength lies in fusing teaching and research into breakthrough academic experiences. This balance is rare among national institutions yet fitting for a university like SMU that values balance and breadth in education."[6] Further, on its applications page, SMU describes its academic environment as an attribute to student success: "Our Students forge their success in an academic environment that inspires their best effort, every day - we can't wait for you to join our community of problem solvers, influencers and leaders who make an impact around the globe."[7]

36.     In documents like SMU's policy statement and Student Handbook, SMU refers to its policies as campus based or campus wide policies – and utilizes phrases that promote the "campus" and "community".

37.     In the 2019-2020 Student Handbook, SMU's Vice President for Student Affairs conveys that, "Again, we are pleased that you are part of the SMU community. We believe SMU offers much to its students, and we hope that you will take full advantage of all SMU has to offer you. We also look forward to what you will contribute to our community."  The Student Handbook

---

[4] https://www.smu.edu/StudentAffairs/LiveHere.
[5] Id.
[6] https://www.smu.edu/Academics.
[7] https://www.smu.edu/Admission/Apply.

thereafter goes on to list campus and in-person educational services that are available to students at SMU, including 129 physical buildings and areas on campus.

38.     According to the University Policy Manual, the Student Handbook "is a guide for students on the services available at the University."

39.     In fact, the Student Handbook lists "campus" 203 times and "community" 116 times as it conveys the policies, practices, and rights of students at the University.

40.     The Student Handbook goes so far as to define what "campus" and "campus grounds" mean, describing these terms as "refer[ing] to any buildings or grounds owned, leased, operated, controlled, or supervised by the University," indicating that it is a physical location being offered to students.

41.     SMU has established different departments within its infrastructure that provide "essential services, support and programs to students, faculty, staff, and the University as a whole" and on its website states that, "Quality resources that enable students to thrive."

42.     Those essential services are on campus and in person.

43.     In accordance with SMU's financial responsibility agreement, Plaintiffs paid tuition and fees in exchange for the educational services that were detailed and described in other documents provided to them through the other processes at the University.

44.      In its acceptance emails and acceptance letter, SMU offered students admission including an offer to "benefit from and contribute to the SMU community."

45.      In fact, first year students at SMU are required to live on campus and the University promotes "campus [has] built-in resources and opportunities…" including "campus resources, student leadership positions, and increased faculty interactions." The Student Affairs website promotes the on-campus educational services, including encouraging students to take a look at the

data on "SMU on-campus students as they relate to retention, satisfaction, and success."

46.     On the Admissions website of SMU, the University promotes its campus and physical location and then states, "From your very first semester at SMU, you have access to everything that defines the signature SMU experience: research opportunities in a variety of disciplines, outstanding faculty who love to mentor, advisors who will help you navigate your academics, business pitch competitions to start a company and so much more."

47.     The same SMU webpage promotes "Life on Campus" and "Explore Campus" and introduces the physical location as, "Welcome to our vibrant community, where relationships matter – faculty who will encourage you to think big, friends you will have your back and alumni who will help you get a foot in the door. Take the Virtual [Campus] Tour."

48.     Defendant marketed and conveyed the in-person experiences, including through sample materials like this, which are publicly available on Defendant's websites:









49.     In other documents and materials that are not presently available to the Named

Plaintiff, Defendants conveyed the promise of in-person and on-campus educational services that

students at SMU would receive if they enrolled, made payments, and complied with SMU's policies and regulations.

50.     However, that is not what students, including Plaintiff and the Class, received during the semesters affected by COVID-19.

51.     After SMU converted to online-only learning, the educational experiences and services offered to SMU students were materially different in practically every aspect as compared to what was promised, reasonably expected, and what educational experiences were afforded to Plaintiff and the Class.

52.     As a result of COVID-19, the online-only learning options offered to SMU's students were materially different than the educational experience Plaintiff and the members of the Class contracted for, paid for, and reasonably expected to receive.

53.     Students, like Plaintiff, have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

54.     Students, like Plaintiff, were denied access to facilities, such as libraries, laboratories, computer labs, recitations, and study rooms, which are integral to SMU's educational services for which Plaintiff paid a premium.

55.     Students, like Plaintiff, were denied access to activities offered by campus life, which foster intellectual and academic development, independence, and networking for future careers.

56.     SMU priced the tuition and Mandatory Fee based on the in-person educational services, opportunities, and experiences it promised to provide on campus. According to SMU's public documents and websites, all students enrolled and registered for the Spring 2020 semester paid a Mandatory Fee that was labeled as a "General Student Fee," in the amount of $268 per credit

hour – up to the maximum of $3,180.

57.     SMU's "General Student Fee" was assessed for the purpose of paying for and obtaining access to campus facilities and services including labs, libraries, study rooms, health centers, and other physical facilities.

58.     Other course specific fees were assessed to students, depending on their courses and majors, including "Biology Lab Fee," "Chemistry Lab Fee," and other such fees.

59.     During the Spring 2020 and after March 2020, students like Plaintiffs did not have access to the facilities and services for which they paid a Mandatory Fee.

60.     SMU has not made any refund of any portion of the tuition Plaintiff and the members of the Class paid for during the semesters affected by COVID-19, and have offered no discount, rebates, or refunds going forward.

61.     SMU has not refunded any portion of the Mandatory Fee it collected from Plaintiff and the members of the Class for the affected semester even though it closed or ceased operating the services and facilities for which the Mandatory Fee was intended to pay for.

62.     Plaintiff and the Class members are therefore entitled to a pro-rated refund of the tuition and Mandatory Fee they paid for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online and facilities were closed, as well as for other semesters impacted by COVID-19.

63.     Defendant's practice of failing to provide reimbursements for tuition and Mandatory Fee despite the materially different education and other experiences that it provided, as alleged herein, violates generally accepted principles of business conduct.

## PARTIES

64.     Named Plaintiff Luke Hogan is a resident of Keller, Texas. Plaintiff was enrolled

as a full-time graduate student at Southern Methodist University during the Spring 2020 semester. Plaintiff graduated at the conclusion of the semester.

65.     Plaintiff Hogan paid tuition and Mandatory Fees for in-person educational services, experiences, opportunities, and other related collegiate services. Plaintiff Hogan has not been provided a pro-rated refund of the tuition for his in-person classes that were discontinued and moved online, or the Mandatory Fees he paid after the University's facilities were closed and events were cancelled.

66.     Defendant Southern Methodist University ("Southern Methodist" or "SMU") is a private university and a Texas corporation whose principal place of business is located in Dallas, Texas.  This Defendant has been served and appeared through counsel.

## JURISDICTION AND VENUE

50.     This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which one or more of the other Class members are citizens of a State different from the Defendant.

51.     This Court has personal jurisdiction over Defendant because it resides in this District.

52.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because Defendant resides in this District and is a resident of the state in which the District is located.

53.     Plaintiff attended SMU in this District and in the State of Texas.

## CLASS ALLEGATIONS

54.     Plaintiff brings this matter on behalf of himself and those similarly situated. As detailed in this Petition, Defendants failed to provide the in-person education services the

Plaintiffs paid tuition and fees to receive during the Spring Semester 2020.

55.     Plaintiffs were impacted by and damaged by this misconduct.

56.     Accordingly, this action is ideally situated for class-wide resolution.

57.     The Class is defined as all individuals who paid tuition and fees to Southern Methodist University to receive in-person educational services, experiences, and opportunities during the Spring Semester 2020 ("Class").

58.     The Class is properly brought and should be maintained as a class action pursuant to FRCP 23, satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

59.     Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of individuals who are Class Members described above who have been damaged by Defendant's breach of contract.

60.     Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a.  Whether Defendants accepted money from Plaintiff and Class Members in exchange for a promise to provide services;
    b.  Whether Defendants provided those services as bargained for;
    c.  Whether Plaintiff and the Class Members are entitled to a pro-rata portion of the tuition and fees paid for services that were not provided;
    d.  Whether Defendants were unjustly enriched;
    e.  Whether Defendants converted money from the Plaintiff and Class Members.

61.     Typicality: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was subject to Defendants breach of contract, unjust enrichment and conversion. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

14

62.     Adequacy: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent; his claims are common to all members of the Class, and he has a strong interest in vindicating his rights; he has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and his counsel. Defendants have acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

63.     The Class is properly brought and should be maintained as a class action under FRCP 23 because a class action is superior to traditional litigation of this controversy. Common issues of law and fact predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' conduct.

64.     Superiority: In addition, a class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a.  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive-if not totally impossible-to justify individual actions;

    c.  When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Class and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions are outweighed by their interest in efficient resolution by single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were harmed by Defendants' conduct.

65.     Accordingly, this Class is properly brought and should be maintained as a class action under FRCP 23 because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

66.     Plaintiff also seeks class certification for injunctive and declaratory relief under FRCP 23(b)(2) and (b)(3), at the appropriate juncture.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
**(On Behalf of Plaintiff and All Class Members)**

67.     Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

68.     Plaintiff brings this claim individually and on behalf of the members of the Class.

69.     Plaintiff and Class members entered into binding contracts with Defendant in accordance with the terms of the Catalogs, Defendant's publications, Defendants' offer letters, Defendants' policy documents, and Defendant's usual and customary practice of providing on-

campus courses.

70.     Defendant offered in-person and on-campus educational services to Plaintiff and similarly situated students through the application process, the admission process, enrollment process, registration process, and payment process, including through numerous documents.

71.     The language on SMU's website, Catalogs, acceptance letters and in other materials made available to students promising in-person instruction, campus facilities, services, and resources became terms of the contract. That is, at the time of contract, the parties had the reasonable expectation that, in exchange for tuition and fee payments, Defendant would provide Plaintiff and Class members with an on-campus education. The nature of the instruction provided by SMU at the time Plaintiff and Class members enrolled (i.e., in-person classroom instruction) as well as the facilities and resources offered by SMU were and are material terms of the bargain and contractual relationship between students and Defendant.

72.     Under their contracts with Defendant, and per Defendant's usual and customary practice of providing on-campus courses, Plaintiff and Class members registered for on-campus courses and paid Defendant's tuition and/or fee for Defendant to provide in-person instruction and access to Defendant's facilities.

73.     Plaintiff and Class members accepted and intended to use and enjoy Defendant's on-campus classes and facilities.

74.     Plaintiff and Class members have fulfilled all requirements of their mutually agreed contracts, having followed the Catalogs' policies, procedures, and requirements for registering and paying for on-campus courses and access to on-campus facilities and services. Plaintiff and Class members have paid Defendant for all financial assessments starting in the Spring 2020 semester.

75.     By ceasing in-person instruction, relegating Plaintiffs and Class members

exclusively to remote instruction, and shutting down campus facilities and opportunities to Plaintiff and the Class, Defendant failed to provide the services for which Plaintiffs and Class members bargained when they entered into their contractual relationship with Defendant.

76.     Defendant's failure to provide in-person instruction and shutdown of campus facilities amounts to a material breach of the contract.

77.     The tuition, fees, and other costs that Plaintiff and the proposed Class paid were intended to cover in-person educational and extracurricular services. Defendant, however, have failed and continues to fail to provide the education and services due under the contracts, yet have improperly retained the funds Plaintiff and the other Class members paid or agreed to pay.

78.     Plaintiff and members of the Class have suffered damages as a direct and proximate result of Defendant's breach, including being deprived of the education, experience, and services that they were promised and reasonably expected to obtain, and for which they have paid.

79.     Plaintiffs and Class members are entitled to an award of money damages or partial restitution in an amount to be determined at trial as redress for SMU's breach, including but not limited to pro-rated reimbursement of the tuition, fees, and other expenses for services that Defendant failed and continues to fail to deliver fully.

80.     Defendant's performance under the contracts is not excused because of COVID-19. Even if performance were excused or impossible, Defendant would nevertheless be required to return the funds received for services and/or goods that it did not provide.

<u>**SECOND CAUSE OF ACTION**</u>
<u>**CONVERSION**</u>
**(On Behalf of Plaintiff and All Class Members)**

81.     Plaintiff repeats and re-alleges the factual allegations above, as if fully set forth herein.

82.     Plaintiff brings this claim individually and on behalf of the members of the Class.

83.     Plaintiff and the Class have made financial arrangements that required them to make payments before Defendant provided services.

84.     Defendant accepted Plaintiff's monies with the express understanding that the Defendant would provide in-person and on-campus educational experiences, opportunities, and services.

85.     Defendant was unable to perform such services or provide such experiences and opportunities.

86.     Defendant has converted Plaintiff's and the Class' property – namely their tuition and fees - into their own property[8] without just compensation.

87.     Defendant has converted Plaintiff's tuition and fee into its own monies without providing the in-person and on-campus services that Plaintiff and the Class gave their money for.

88.     Defendant's failure to return the tuition and fee paid by its students is a separate and distinct harm from its failure to provide the promised and agreed-upon in-person learning and on-campus services.

89.     It is inequitable for Defendant to convert such funds into its own profits despite the failure to provide such services, experiences, and opportunities.

---

[8] Indeed, colleges and universities must be able to separately account for student payments, as well as financial aid received on an individual student's behalf, as these institutions are frequently required to issue refunds to the government and the student for instances where the student enrolls, but does not complete classes for which the institution has received financial aid payments from the federal government. The Higher Education Act ("HEA"), Title IV, governs federally funded student financial aid programs for college and post-secondary vocational training. *See* 20 U.S.C. §§ 1070–1099 (1990 & 1992 Supp.). The HEA requires that when a student withdraws partway through the enrollment period, the institution must refund a certain portion of the charges to account for its reduced educational obligations toward the student. *Career Coll. Ass'n v. Riley*, 74 F.3d 1265, 1269 (D.C. Cir. 1996). Thus, it is beyond dispute that any college or university receiving any tuition payments through government-provided financial aid must be able to account for what was paid for each individual student. This means that each student's tuition funds must be capable of being separately identified and sequestered, and a claim for conversion of those funds can be properly sustained. Moreover, discovery will flesh out more information about the particular accounting practices employed by Defendant.

**THIRD CAUSE OF ACTION**
**COMMON LAW UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members in the Alternative)**

90.     Plaintiff repeats and re-alleges the factual allegations above, as if fully set forth herein.

91.     In the alternative, Plaintiff brings this claim for unjust enrichment individually and on behalf of the members of the Class.

92.     By paying SMU tuition and the Mandatory Fee for the Spring 2020 semester, the University agreed to, among other things, provide an in-person and on-campus live education as well as the services and facilities to which the Mandatory Fee that were paid pertained to throughout the semester.

93.     Defendant has retained the benefits of the amount of tuition and fees that Plaintiff and Class members have provided – without providing the benefits that Plaintiff and Class members were owed.

94.     For example, Defendant failed to provide Plaintiff and Class Members access to any on-campus facility after in or around March 12, 2020. Yet Defendant assessed Plaintiff with tuition and Mandatory Fee that covered the cost of upkeep and maintenance of such facilities, services, costs, and expenses.

95.     Plaintiff was not able to access such facilities or services remotely.

96.     Plaintiff paid tuition and Mandatory Fee with the expressed understanding that such costs included the in-person classes, services, opportunities, and experiences that SMU has previously marketed, promoted, or made available prior to COVID-19.

97.     The costs incurred for having an online only program is significantly lower than the overhead needed to provide classes and services on campus.

98.     Defendant has been unjustly enriched by Plaintiff's payment of tuition and Mandatory Fee.

99.     Despite not being able to provide such services, SMU failed to provide reimbursements for tuition and fees despite the diminished value of the education and other experiences that it provided, and the reduced benefits associated with the fees.

## JURY DEMAND

100.    Plaintiff demands a trial by jury and has paid the jury fee.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) For an order certifying the Class under the FRCP and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c) For compensatory damages in an amount to be determined by the trier of fact;

(d) For an order compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

(e) For an order of restitution and all other forms of equitable monetary relief;

(f) For an order awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

(g) For an order awarding pre- and post-judgment interest on any amounts awarded; and,

(h) For an order awarding such other and further relief as may be just and proper, including injunctive relief and declaratory relief.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: July 26, 2021

Respectfully submitted,

**THE EDWARDS LAW GROUP**
THE HAEHNEL BUILDING
1101 E. 11TH STREET
AUSTIN, TX  78702
Tel.  512-623-7727
Fax.  512-623-7729

By____/s/ Jeff Edwards_____
    JEFF EDWARDS
    State Bar No. 24014406
    jeff@edwards-law.com
    MICHAEL SINGLEY
    State Bar No. 00794642
    mike@edwards-law.com
    DAVID JAMES
    State Bar No. 24092572
    david@edwards-law.com

**AND**

**LOVINS TROSCLAIR, P.L.L.C.**
Kenneth P. Trosclair
State Bar No. 24033548
Pete@LTLegalTeam.com
12700 Park Central Dr.
Suite 520
Dallas, TX 75251
Tel: 214-484-1930
Fax: 214-276-1475

**AND**

**THE SULTZER LAW GROUP, P.C.**
Jason P. Sultzer, Esq.*
Mindy S. Dolgoff, Esq.*
sultzerj@thesultzerlawgroup.com
dolgoffm@thesultzerlawgroup.com
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (854) 705-9460

**AND**

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown, Esq.*
Michael A. Tompkins, Esq.*
Brett R. Cohen, Esq.*
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
jbrownl@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

* Admission *Pro Hac Vice* to be requested

*Counsel for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

By my signature below, I hereby certify that I electronically filed the foregoing with the Clerk of Court using the Court's Electronic Case Filing system which will send notification to all counsel of record.

/s/ Michael Singley
Michael Singley