UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LUKE HOGAN, *on behalf of himself and other individuals similarly situated,* | § § § § | |
| *Plaintiff,* | § § | Civil Action No. 3:20-CV-02899-X |
| v. | § § | |
| SOUTHERN METHODIST UNIVERSITY, *and other affiliated entities and individuals,* | § § § § | |
| *Defendant.* | § § | |

## **MEMORANDUM OPINION AND ORDER**

There are many different reactions to remote learning.  Some think it a wonderful creation that helped education continue during the COVID-19 pandemic. Others think remote learning is "not fine.  It's horrible, a form of psychic torture, and I hate it so deeply that my hatred feels physical, like an allergic reaction."[1]  Luke Hogan might not go that far, but he sure wasn't happy when his school, Southern Methodist University (SMU) shifted to online learning during and because of the pandemic.  So he sued and seeks to represent a class of affected SMU students to obtain a pro rata refund of tuition and fees for SMU's shift to online learning.

---

[1] Emily Gould, *Remote Learning Is a Bad Joke: My kid can't handle a virtual education, and neither can I*, THE ATLANTIC (Aug. 18, 2020), https://www.theatlantic.com/ideas/archive /2020/08/kindergartener-virtual-education/615316/.

SMU moved to dismiss the suit, claiming Texas's shiny new Pandemic Liability Protection Law bars Hogan's claim, there is no actionable contract, and Hogan's claims for conversion and unjust enrichment fail as a matter of law. (Doc. No. 32). Hogan thinks all his claims are awesome and the Pandemic Liability Protection Law is unconstitutionally retroactive.

The Court agrees with SMU for several reasons. On the contract claim, Hogan never points to a specific provision where SMU promised in-person learning. Hogan's conversion claim is based on converting either an intangible right to in-person education or converting money, and Texas disallows conversion claims for intangible rights and money. Hogan's unjust enrichment claim fails because it requires him to plead fraud, duress, or undue advantage, which Hogan did not plead or suggest he could. As such, all of Hogan's claims fail as a matter of law.

But if the Court is wrong and Hogan stated viable claims, the Texas Pandemic Liability Protection Law bars Hogan's claim for money (but not his claim for declaratory or injunctive relief). The law is not unconstitutionally retroactive as applied to Hogan. It operates to extinguish his claim for money but not other relief and serves a compelling government interest by broadly covering businesses and educational institutions for health and safety reasons. Plus, there is no demonstration that Hogan has strong claims even without the new law barring his claim for money. These facts show that on balance, Texas courts would uphold the new law.

For these reasons, as more fully explained below, the Court **GRANTS** SMU's motion to dismiss and **DISMISSES WITH PREJUDICE** Hogan's claims.

## I. Factual Background

Hogan paid tuition and fees to attend SMU in the spring of 2020.  In March 2020, SMU announced that because of COVID-19, it would transition all in-person classes and college experiences online for the remainder of the semester.  Hogan filed this suit, making class allegations and claiming SMU failed to provide the in-person classes and experiences for which he allegedly bargained when he paid his tuition and fees.  Hogan seeks a pro-rata refund of the amount he overpaid.  He graduated at the end of the Spring 2020 semester.

Hogan alleges he and other students paid approximately $25,000 in tuition and $3,180 for a mandatory general fee (as well as other class-specific fees) for the Spring 2020 semester.  When COVID-19 made its presence known, SMU shifted to online learning on or around March 12, 2020.  Hogan claims SMU stopped providing the services or facilities the mandatory fee covers.  At bottom, Hogan claims he and his peers paid tuition and fees for "for a first-rate education and on-campus, in person educational experiences, with all the appurtenant benefits offered by a first-rate university[,]" but were instead provided a materially different alternative.[2]  He seeks a pro rata refund of tuition, fees, and other expenses SMU failed to deliver.

---

[2] Hogan alleges "SMU has not made any refund of any portion of the tuition Plaintiff and the members of the Class paid for during the semesters affected by COVID-19."  Doc. No. 27 at 12.  SMU claims it gave over $7 million (said with a Dr. Evil pinkie to the mouth) in credit adjustments or refunds for housing, dining, and parking—citing its website.  SMU suggests the Court can judicially notice its website.  Notwithstanding the fact that this figure is seven-fold higher than Dr. Evil's proposed demand to the United Nations, litigants and lawyers have taken judicial notice way too far.

SMU moved to dismiss on a variety of grounds, one of which is that the new Texas Pandemic Liability Protection Law bars Hogan's claims. Hogan responded, arguing among other things that the new law is unconstitutionally retroactive. That argument triggered Hogan's duty to notify the Texas Attorney General of his challenge to the constitutionality of a state law,[3] which Hogan did on October 22, 2021.[4]

Hogan filed this purported class action in state court. SMU removed it to federal court based on the federal Class Action Fairness Act. Hogan moved to remand it to state court, which this Court denied. Hogan then filed a federal complaint, which SMU moved to dismiss.

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff."[5] To survive a motion to dismiss, the claimant must allege enough facts "to state a claim to relief that is plausible on its face."[6] "A

---

Under Federal Rule of Evidence 201, courts may judicially notice facts that are not subject to reasonable dispute but are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. These sources typically include such things as publicly available government records. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (affirming district court judicial notice of publicly available FDA documents and transcripts). A private defendant cannot prevail on a motion to dismiss by simply putting something on the internet that contradicts the complaint. *But see* https://memegenerator.net/instance/54801768/abraham-lincoln-if-its-on-the-internet-it-must-be-true-abraham-lincoln-1863 (Abraham Lincoln stating "If it's on the internet, it must be true.").

[3] FED. R. CIV. P. 5.1(a) (requiring litigants to serve notice on state attorneys general when challenging constitutionality of state laws).

[4] Doc. No. 37.

[5] *Lindsay v. United States*, 4 F.4th 292, 294 (5th Cir. 2021).

[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[8] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[9]

### III. Analysis

SMU makes several arguments in its motion to dismiss.  Globally, SMU argues that Texas's new Pandemic Liability Protection Law bars all of Hogan's claims, or the claims are for educational malpractice which courts routinely dismiss.  Specifically, SMU contends Hogan fails to state a viable claim for breach of contract (express or implied), conversion, or unjust enrichment.   The Court must take the non-constitutional arguments first and reaches the Pandemic Liability Protection Law (wrapped up in a constitutional challenge) at the end as an alternate basis to support dismissal of Hogan's request for money.

### A.  Breach of Contract and Educational Malpractice

SMU argues the Student Rights and Responsibilities agreement is the governing contract, and it personally obligates students to pay tuition, fees, and other

---

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[8] *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

[9] *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

charges without any reference to in-person education.  And SMU further argues that Hogan is bringing an educational malpractice claim, which Texas and other courts foreclose.  Hogan counters that he is bringing a breach claim and that the Student Rights and Responsibilities agreement is not a contract, is ambiguous, and isn't the entirety of the contractual relationship between SMU and the students.  The Court concludes Hogan isn't bringing a precluded educational malpractice claim but is instead bringing a contract claim that fails because he hasn't identified a promise of in-person education.

In Texas, a breach of contract plaintiff must allege: "1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages to the plaintiff resulting from the breach."[10]  But out of respect for university freedom, federal courts engage in "restrained judicial review of the substance of" a university's "academic decisions."[11] As the Fifth Circuit has observed, "we know of no case which holds that colleges and universities are subject to the supervision or review of the courts in the uniform application of their academic standards."[12]  And the Texas Supreme Court has recognized universities' broad authority to make their own decisions about the educational process.[13]

---

[10] *Lewis v. Bank of Am.*, 343 F.3d 540, 545 (5th Cir. 2003).

[11] *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985).

[12] *Mahavongsanan v. Hall*, 529 F.2d 448, 450 (5th Cir. 1976).

[13] *See Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 934 (Tex. 1995) ("[T]he injunctive relief represents unwarranted judicial interference with the educational process.").

So which is SMU's choice to shift to online learning—a decision governed by a contract term, or an educational process decision?  Hogan has not pointed to a specific term in a contract, express or implied, that guarantees in-person education.  This is something federal courts hold breach of contract plaintiffs to.[14]  This principle is less about breach claims and more about federal pleading standards.[15]

Here are Hogan's allegations about the contracts that SMU allegedly breached:

> 1.    SMU's "Find Courses" portal specifically offers students the option to search for classes based on "Location" which includes options for "Dallas (Main Campus)," "Abroad," "Online," & "SMU-in- Taos."
>
> 2.    Plaintiff and the members of the Class chose classes that were offered on the physical campuses of SMU, and they paid tuition for and reasonably expected to receive the benefit of on-campus live interactive instruction and an on-campus educational experience throughout the semester.
>
> 3.    Plaintiff and SMU entered into a contractual agreement where Plaintiff would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services.
>
> 4.    The terms of the contractual agreement were set forth in the publications, documents, and materials provided to Plaintiff from SMU, throughout the application process, the admissions process, the enrollment process, the registration process, and the payment process - including, but not limited to: SMU's website, marketing materials, the application for admission submitted by Plaintiff and Class Members, the acceptance letters received by

---

[14] *See Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 238 (5th Cir. 2014) ("[A] claim for breach of a note and deed of trust must identify the specific provision in the contract that was breached."); *Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 971 (N.D. Tex. 2014) (Boyle, J.) ("[A] plaintiff suing for breach of contract must point to a specific provision in the contract that was breached by the defendant." (cleaned up)).

[15] *See Chapa v. Chase Home Fin. LLC*, No. CIV.A. C–10–359, 2010 WL 5186785, at *5 (S.D. Tex. Dec. 15, 2010) ("[B]ecause Plaintiff has failed to provide the loan documents and failed to indicate which loan documents—let alone which provisions—were breached, Plaintiff has failed to satisfy the pleading standards of Rule 8(a).").

Plaintiff and Class Members, the registration materials, the course catalog, course listings, the bills/invoices, the student handbook, orientation materials and other materials that were provided to the Plaintiff and the Class conveying the educational services that Defendant was offering to provide.

5.   Prior to Plaintiff's enrollment, SMU highlighted in marketing materials, advertisements, and other documents that in-person educational opportunities, experiences, and services were intrinsic aspects of the educational experience provided to students.

\*       \*       \*

6.   Plaintiff and Class members entered into binding contracts with Defendant in accordance with the terms of the Catalogs, Defendant's publications, Defendants' offer letters, Defendants' policy documents, and Defendant's usual and customary practice of providing on-campus courses.

7.   Defendant offered in-person and on-campus educational services to Plaintiff and similarly situated students through the application process, the admission process, enrollment process, registration process, and payment process, including through numerous documents.

8.   The language on SMU's website, Catalogs, acceptance letters and in other materials made available to students promising in-person instruction, campus facilities, services, and resources became terms of the contract. That is, at the time of contract, the parties had the reasonable expectation that, in exchange for tuition and fee payments, Defendant would provide Plaintiff and Class members with an on-campus education. The nature of the instruction provided by SMU at the time Plaintiff and Class members enrolled (i.e., in-person classroom instruction) as well as the facilities and resources offered by SMU were and are material terms of the bargain and contractual relationship between students and Defendant.[16]

---

[16] Doc. No. 27 at 5–6, 16–17 (cleaned up).  SMU and Hogan spill much ink over how to classify the agreement that SMU calls the "Student Agreement" and what Hogan relabels to be promissory note.  These are red herrings.  The question is what contractual promise Hogan claims SMU breached—not what contract SMU believes controls the situation.  But Hogan has yet to identify a specific contractual promise for in-person learning.

The complaint also references statements on student housing, an inspiring academic environment, references to "campus" and "community," and pictures of students uniformly enjoying themselves on campus.[17]

These allegations are long on words but short on actionable detail. Federal courts require actionable detail. Without relatively specific claims, a court cannot conclude a claim is plausible (here, that SMU made an enforceable promise of in-person learning). Courts have dismissed a litany of similar claims for failure to identify a specific contractual promise of in-person learning.[18] This Court joins that large and growing group.[19]

---

[17] Doc. No. 27 at 7–10.

[18] *See Jones v. Adm'rs of Tulane Educ. Fund*, No. CV 20-02505, 2021 WL 5097769, at *4 (E.D. La. Sept. 29, 2021) (dismissing similar claims against Tulane University because, "at the end of the day, Plaintiffs' alleged breach of contract claim essentially morphs into an educational malpractice claim seeking damages for a mode of educational instruction with which Plaintiffs are unsatisfied"), *appeal filed*, No. 21-30681 (5th Cir. Nov. 1, 2021); *King v. Baylor Univ.*, No. 6-20-CV-00504-ADA, 2021 WL 1226562, at *1 (W.D. Tex. Mar. 31, 2021) (dismissing similar claims against Baylor University), *appeal filed*, No. 21-50352 (5th Cir. Apr. 27, 2021); *see also Zagoria v. New York Univ.*, No. 20CIV3610GBDSLC, 2021 WL 1026511, at *4 (S.D.N.Y. Mar. 17, 2021) (dismissing claims regarding in-person learning at New York University because "Plaintiff does not point to any express language promising the 'certain specified service' of in-person classes"); *Amable v. New Sch.*, No. 20-CV-3811 (KMK), 2021 WL 3173739, at *1 (S.D.N.Y. July 27, 2021) (dismissing claims regarding in-person learning at private university); *Fedele v. Marist Coll.*, No. 20 CV 3559 (VB), 2021 WL 3540432, at *1 (S.D.N.Y. Aug. 10, 2021) (same); *Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOX), 2020 WL 7350212, at *1 (C.D. Cal. Dec. 11, 2020), (same), *appeal dismissed*, No. 20-56424, 2021 WL 6196969 (9th Cir. July 8, 2021); *Hernandez v. Ill. Inst. of Tech.*, No. 20-CV-3010, 2021 WL 1600171, at *1 (N.D. Ill. Apr. 23, 2021) (same); *Gociman v. Loyola Univ. of Chi.*, 515 F. Supp. 3d 861, 864 (N.D. Ill. 2021) (same); *Oyoque v. DePaul Univ.*, 520 F. Supp. 3d 1058, 1060 (N.D. Ill. 2021) (same); *Hickey v. Univ. of Pittsburgh*, 535 F. Supp. 3d 372, 375 (W.D. Pa. 2021) (same for public university).

[19] The Court acknowledges the similar, recently decided case from the D.C. Circuit, *Shaffer v. George Washington Univ.*, 27 F.4th 754, 2022 WL 678086 (D.C. Cir. 2022). There, the D.C. Circuit affirmed the district court's dismissal of the plaintiffs' claims based on express contracts promising in-person education (finding that there was no supporting evidence), but reversed the district court's dismissal of plaintiffs' claims based on an implied-in-fact contract. *Id.* at *4. Hogan's case is different for at least three reasons. First, the *Shaffer* plaintiffs pleaded much more factual detail than Hogan does. Second, the *Shaffer* plaintiffs presented a host of communications from the defendant universities addressing the benefits of in-person learning and alleged that the universities charged higher student fees for in-person learning than online learning—thus plausibly pleading the existence of an implied contract guaranteeing in-person learning. *Id.* at *5. Hogan has not done so here. Third,

### B. Conversion

SMU argues Hogan has no viable conversion claim because (1) Texas law doesn't recognize claims for conversion of money or intangible property rights to in-person education, and (2) Hogan received valuable consideration for his tuition and fees. Hogan counters that Texas law does allow claims for conversion of money, and the fact that SMU has kept all of Hogan's tuition and fees but not delivered all it promised gives him a viable conversion claim. The Court agrees with SMU.

"The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion."[20] The elements of a conversion claim are: (1) the plaintiff owned, legally possessed, or was entitled to possess the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused the plaintiff's demand for return of the property.[21]

So what kind of "property" are we talking about with Texas conversion claims? The first caveat is that conversion applies to physical property, not intangible

---

even if Hogan were able to plausibly plead an implied contract, his claim would still fail. Texas law forecloses an implied-contract claim alleging that a university impermissibly changed its policies. *Southwell v. Univ. of Incarnate Word*, 974 S.W.2d 351, 356 (Tex. App.—San Antonio 1998, pet. denied). "The specific terms of such a[n implied] contract must logically be defined by the college or university's policies and requirements. And, in the absence of a binding catalog, the student agrees that those terms are *subject to change* throughout the course of his or her education." *Id.* (emphasis added).

[20] *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971).

[21] *Robin Singh Educ. Servs., Inc. v. Test Masters Educ. Servs., Inc.*, 401 S.W.3d 95, 97 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

property.[22]  An exception to the tangible property requirement is when intangible property gets subsumed in tangible property, like when an intangible right has been merged into a physical document.[23]  While Hogan claims even intangible property like emails can fit within this exception, Hogan never attempts to explain how an intangible right to in-person education rolled into a physical object that SMU wrongfully appropriated from Hogan.  As such, Hogan cannot base a conversion claim on an intangible right to in-person education.

Hogan also argues money can be (and was) converted.  But the Fifth Circuit has said conversion claims for money pass muster under Texas law only when "money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper."[24]  Hogan has not alleged and cannot allege that he delivered his tuition to SMU in trust for safekeeping, nor that the portion he wants returned was intended to be segregated for safekeeping.[25]  Hogan's argument that SMU converted either his money or his intangible right to in-person education simply does not constitute a claim for conversion under Texas law.

---

[22] *Domain Prot., LLC v. Sea Wasp, LLC*, 426 F. Supp. 3d 355, 389 (E.D. Tex. 2019) ("Conversion does not apply to purely intangible property."), *aff'd*, 23 F.4th 529 (5th Cir. 2022).

[23] *Id.*

[24] *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007) (quoting *Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex. App.—Dallas 1992, writ denied)).

[25] *See* Doc. No. 27 at 19 (Hogan alleging in conversion claim that SMU "accepted Plaintiff's monies with the express understanding that the Defendant would provide in-person and on-campus educational experiences, opportunities, and services," not that SMU held those monies in trust).

### C. Unjust Enrichment

Hogan's final claim is for unjust enrichment.  SMU argues that: (1) an express contract (the Student Agreement) governs the parties' relationship, so there can be no unjust enrichment claim; and (2) Hogan has not pled fraud, duress, or undue advantage as Texas law requires.  Hogan responds that: (1) the unjust enrichment claim is properly pled in the alternative to the contract claim; and (2) Texas law requires only allegations of a party unjustly receiving a benefit.  The Court agrees with SMU that Hogan has not pled fraud, duress, or undue advantage, which Texas law requires.

The Texas Supreme Court minced no words on this requirement: "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."[26]  In case that wasn't clear, the Court gave it reasons: "Unjust enrichment is not a proper remedy merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall."[27]  This ruling from the Texas Supreme Court was hiding in Hogan's plain site.  The primary case he relies on quotes the Supreme Court's ruling: "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking

---

[26] *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

[27] *Id*. (cleaned up).

of an undue advantage."[28]  This is a disappointing breach of counsel's duty of candor to the courts.

So did Hogan plead fraud, duress, or undue advantage?  In his response to SMU's motion to dismiss, Hogan never points to any allegation in his complaint about fraud, duress, or undue advantage.  Nor did his response suggest he could make such allegations if he had another chance.  Hogan does not state a viable claim for unjust enrichment.[29]

### D. Pandemic Liability Protection Law

SMU also makes the global argument that the Pandemic Liability Protection Law (the Law) bars all of Hogan's claims, and Hogan contends the law is unconstitutionally retroactive.[30]  The Court believes this argument is not dispositive because, as addressed above, all of Hogan's claims have other fatal defects.  If the Court is wrong about that, the Court believes the Pandemic Liability Protection Law is not unconstitutionally retroactive as applied to Hogan.  The Law would bar Hogan's claims for monetary relief but not his claims for declaratory or injunctive relief.  As

---

[28] *Stiger v. Deutsche Bank Nat'l Tr. Co.*, No. 3:15-CV-3075-N, 2016 WL 11474099, at *3 (N.D. Tex. July 5, 2016) (Godbey, J.) (quoting *Heldenfels Bros.*, 832 S.W.2d at 41).

[29] Because of this holding, the Court need not reach SMU's additional argument on alternative pleading.

[30] Hogan notified the Texas Attorney General of his challenge to the constitutionality of the Pandemic Liability Protection Law under Federal Rule of Civil Procedure 5.1 and the Court certified that challenge to the Texas Attorney General under Rule 5.1 and 28 U.S.C. § 2403.  The Court has waited over 45 days from its certification to comply with Texas Government Code § 402.010, which is only advisory in federal court but well-intentioned.  The Attorney General submitted an amicus brief contending the Pandemic Liability Protection Act is not unconstitutionally retroactive as to Hogan. Doc. No. 44.

such, this would not be a valid basis on this limited record for the Court to dismiss Hogan's entire suit (beyond his request for monetary relief).

Governor Abbott signed the Pandemic Liability Protection Law on June 14, 2021,[31] which provides:

> An educational institution is not liable for damages or equitable monetary relief arising from a cancellation or modification of a course, program, or activity of the institution if the cancellation or modification arose during a pandemic emergency and was caused, in whole or in part, by the emergency.[32]

Hogan appears to concede the Law applies to his claims but counters that the law is unconstitutionally retroactive.[33]   The Texas Constitution provides that "[n]o bill of attainder, ex post facto law, retroactive law, or any other law impairing the obligation of contracts shall be made."[34]   A retroactive law is one that extends to matters that occurred in the past.[35]   Here, the 2021 Law would extinguish Hogan's claims that accrued in 2020 and that he filed in 2020.   "But not all retroactive statutes are unconstitutional."[36]   The Texas Supreme Court's three-part test for whether a retroactive law is unconstitutional looks to: "the nature and strength of the public interest served by the statute as evidenced by the Legislature's factual findings; the

---

[31] Act of June 14, 2021, 87th Leg., R.S., ch. 528, 2021 Tex. Gen. Laws, S.B. 6, § 3.

[32] TEX. CIV. PRAC. & REM. CODE § 148.004(b).

[33] Under Texas law, courts "presume the statute is prospective unless expressly made retrospective." *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Est. of Arancibia ex rel. Vasquez-Arancibia*, 324 S.W.3d 544, 547 (Tex. 2010).  The Pandemic Liability Protection Law, signed in 2021, applies "to an action commenced on or after March 13, 2020, for which a judgment has not become final before the effective date of this Act."  Act of June 14, 2021, 87th Leg., R.S., ch. 528, 2021 Tex. Gen. Laws, S.B. 6, § 5(a).

[34] TEX. CONST. art. I, §16.

[35] *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 707 (Tex. 2014).

[36] *Id.*

14

nature of the prior right impaired by the statute; and the extent of the impairment."[37] The Texas Supreme Court observed that this test "acknowledges the heavy presumption against retroactive laws by requiring a compelling public interest to overcome the presumption" while balancing the notion that "statutes are not to be set aside lightly."[38]

Before wading through this test, the Court must assess whether this test applies to statutes that change remedies (like the Pandemic Liability Protection Law does). Hogan says the Law "completely extinguishes any right of recovery" on his common law claims.[39] SMU says it extinguishes only Hogan's remedy of damages and not remedies for injunctive or declaratory relief (which he also seeks).[40]

Both sides are missing something. Hogan misses the text of the Law that extinguishes his damages remedy only, not his ability to sue. The Law specifies that educational institutions in this context are "not liable for *damages or equitable monetary relief*."[41] While SMU gets that point and also the fact that Hogan brought claims for declaratory and injunctive relief, SMU filed its argument in a motion to dismiss Hogan's whole suit. But the Pandemic Liability Protection Law wouldn't do that (even if there's no retroactivity problem). It bars only Hogan's requested remedy of damages.

---

[37] *Id*. (cleaned up). The parties brief Texas standards on retroactivity, presumably because Texas law applies to Hogan's claims. The Court sees no basis to depart from the parties' framework.

[38] *Id*. (cleaned up).

[39] Doc. No. 34 at 13.

[40] Doc. No. 35 at 7 ("The Law impacts Plaintiff's remedy, not the right to sue.").

[41] TEX. CIV. PRAC. & REM. CODE § 148.004(b) (emphasis added).

So we know the Law extinguishes one of Hogan's three requested remedies. Does that fact exempt it from the Texas Supreme Court's three-part test for retroactivity? Both before and after the Supreme Court created the three-part test in *Robinson*,[42] that Court repeatedly held that "applying procedural, remedial, or jurisdictional statutes retroactively does not violate the Constitution's prohibition on retroactive laws."[43] "This is because procedural and remedial laws generally do not affect vested rights, which are property rights that the Constitution protects like any other property."[44] Such rights tend to vest when a plaintiff obtains a favorable judgment.[45]

The Court does not believe that the Law's focus on remedies exempts it from the *Robinson* test; it just ensures a win under the *Robinson* test. In *Robinson*, then-Justice Hecht[46] presciently recognized that remedial, procedural, or jurisdictional statutes have an easier time overcoming a retroactivity challenge. But the Supreme Court did not exempt those statutes from having to take the test altogether:

> Under this [new three-part] test, changes in the law that merely affect remedies or procedure, or that otherwise have little impact on prior rights, are usually not unconstitutionally retroactive. But these consequences of the proper application of the prohibition cannot substitute for the test itself. The results in all of our cases applying the constitutional provision would be the same under this test.[47]

---

[42] *Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126 (Tex. 2010).

[43] *In re Occidental Chem. Corp.*, 561 S.W.3d 146, 161 (Tex. 2018).

[44] *City of Austin v. Whittington*, 384 S.W.3d 766, 790 (Tex. 2012).

[45] *See id.* (discussing a condemnor obtaining a vested right in property it seeks only when it obtains a favorable judgment).

[46] Now Chief Justice.

[47] *Robinson*, 335 S.W.3d at 146.

Even aside from the easier time remedial, procedural, and jurisdictional laws have with the *Robinson* test, retroactivity challenges prevailed only four times in Texas Supreme Court history.[48]  As the Fifth Circuit has observed, those four cases dealt with laws that revived expired claims or laws that fully extinguished vested rights.[49]  The Court will now proceed to assess the law under the *Robinson* test.

### 1. *Public Interest*

The Texas Supreme Court's two recent significant cases on retroactivity, *Robinson* and *Tenet*, shed light on this factor.  In *Robinson*, the Texas Legislature passed a law for the sole purpose of benefiting one company by reducing its asbestos litigation liability and made no legislative findings.[50]  Unsurprisingly, the Texas Supreme Court found such a targeted law to have only a slight public interest.[51]  In *Tenet*, the Texas Legislature had completely overhauled Texas's medical malpractice laws to "make affordable medical and health care more accessible and available to the citizens of Texas" and aimed to do so "in a manner that will not unduly restrict a claimant's rights any more than necessary to deal with the crisis."[52]  After Legislative hearings and evidence gathering, the Legislature "expressly found that a spike in healthcare liability claims was causing a malpractice insurance crisis that adversely

---

[48] *Tenet*, 445 S.W.3d at 708.

[49] *DeJoria v. Maghreb Petroleum Expl., S.A.*, 935 F.3d 381, 389 (5th Cir. 2019).

[50] *Robinson*, 335 S.W.3d at 149–50 ("On the contrary, the legislative record is fairly clear that chapter 149 was enacted to help only Crown and no one else. . . . The Legislature made no findings to justify Chapter 149.").

[51] *Id.* at 149.

[52] *Tenet*, 445 S.W.3d at 707 (cleaned up).

affected the provision of healthcare services in Texas."[53]  The Texas Supreme Court held this broad statute to have a compelling public interest.[54]

Here, the scope of the Law is not targeted to one entity like in *Robinson*. Instead, the Law as a whole broadly covers all educational institutions as well as businesses, nonprofits, and healthcare institutions.[55]  Additionally, like in *Tenet* but unlike in *Robinson*, the Legislature made express findings as follows:

> the legislature finds that while some settled expectations regarding claims to which this Act applies may be impaired by this Act, the Act serves a compelling public interest in establishing certain procedures and standards for addressing potential claims against individuals and entities faced with an unprecedented public health emergency that has had severe and adverse impacts on both the health and safety of individuals and the ordinary functioning of governmental entities, the judicial system, the health care delivery system, educational and religious institutions, businesses, nonprofit entities, and others whose daily lives have been upended by the emergency.[56]

And the House Report also addresses educational institutions:

> The onslaught of COVID-19 on Texas has strained the state's . . . educational institutions, and there are widespread concerns regarding the long-term effects of the pandemic on these sectors, including the effects of lawsuits that have already been filed in Texas and across the nation.[57]

---

[53] *Id.*

[54] *Id.*

[55] Act of June 14, 2021, 87th Leg., R.S., ch. 528, 2021 Tex. Gen. Laws, S.B. 6, § 4(c).

[56] *Id.*

[57] H.R. 87-26985, 87th Reg. Sess., at 1 (Tex. 2021), *available at* https://capitol.texas.gov/tlodocs/87R/analysis/pdf/SB00006H.pdf#navpanes=0.

And the Texas Legislature's response to the pandemic invokes it police power to legislate for "[t]he safety and the health of the people," which the U.S. Constitution entrusts to the States.[58]

In short, the Legislature's express findings and broad scope of application indicate a compelling public interest for the Pandemic Liability Protection Law.[59]

### 2. *Nature of the Prior Right*

But a compelling governmental interest is not the only factor.  Courts must balance that interest against the nature of the prior right and the extent the statute impairs that right.  Hogan's suit for a pro rata refund does not tie to clear precedent or an express contractual provision that would make it a slam-dunk contract case.  At best for Hogan, his situation is like two others.  In *Union Carbide Corp. v. Synatzske*, the plaintiff's recovery was "not yet predictable" when the new law took effect.[60] Likewise, in *DeJoria v. Maghreb Petroleum Expl., S.A.*, the new law made addressing barred claims unnecessary and assessing their strength impossible.[61]  And the lack of discovery in this particular case distinguishes it from *Robinson*, where fleshed out discovery showed the strength of Robinson's claim that the new law fully

---

[58] *Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905).

[59] Texas adds that in addition to health and safety, education is a compelling state interest, and university budgets were strained during COVID because of the additional unforeseen costs of transitioning to remote learning while suffering losses in revenue.  Doc. No. 44 at 8.  While this may well be true, the Court will not consider such fact-bound matters at this motion to dismiss stage.

[60] 438 S.W.3d 39, 58 (Tex. 2014).

[61] 935 F.3d at 389 ("Because the passage of the new act made it unnecessary to address those claims, we do not know how likely they were to succeed.").

extinguished.[62]  The lack of discovery and inability to adjudicate these claims before the new law took effect mean that Hogan's right to recover damages is nonexistent at worst (as the above analysis indicates) or unpredictable at best.

### 3. *Extent of Impairment*

The final factor is the extent to which the law impairs the prior right.  Suits with grace periods have always survived retroactivity challenges in the Texas Supreme Court.  In *Tenet*, the prior rights were medical malpractice suits and the new law imposed a 10-year statute of repose (extinguishing claims even if a plaintiff is unaware of the claims).[63]  As applied to the plaintiff there, she had a three-year grace period to sue after the law took effect and before repose barred the claim.[64] *Tenet* noted that grace periods of two months, four years, and seven years all overcame retroactivity challenges.[65]

There was no grace period here between the passage of the Law and the extinguishing of Hogan's monetary recovery.  But as addressed above, the Law only bars Hogan's request for damages.  It does not bar declaratory or injunctive relief, which Hogan asks for in his live complaint.  Here, Hogan is certainly constrained.  It seems obvious that the primary remedy he seeks is damages.  A declaration regarding

---

[62] *Robinson*, 335 S.W.3d at 148 ("Discovery taken in the case shows that the Robinsons' claims had a substantial basis in fact. Their right to assert them was real and important, and it was firmly vested in the Robinsons.").

[63] 445 S.W.3d at 701.

[64] *Id.*

[65] *Id.* at 708.

days gone by seems of little use.  And a request for an injunction may well be moot now that Hogan has graduated and in-person classes appear to have resumed.

But cutting off a right to certain remedies is not the same as barring a suit altogether.  This more limited method has been upheld by the Texas Supreme Court in every retroactivity challenge against prior remedial, procedural, or jurisdictional laws.[66]  And here, the limited impairment of Hogan's remedies, compared to a compelling public interest and a strength of his claim that cannot be assessed is sufficient to have the Pandemic Liability Protection Law withstand his retroactivity argument.  Hogan may well view this as unfair, but as the Fifth Circuit has observed, "unfair does not always equal unconstitutional."[67]

## IV. Conclusion

For the above reasons, the Court **GRANTS** SMU's motion to dismiss Hogan's complaint.  The only remaining question is whether Hogan should be allowed to replead to add specificity on his contract claim.  Courts routinely allow repleading fuzzy complaints when the plaintiff could cure the defects.  Oftentimes, plaintiffs ask to do so.  Hogan didn't ask to replead here.[68]  Nor does it look like Hogan could successfully do so.  Two examples will suffice.  Hogan says he no longer has his

---

[66] *See, e.g.*, *Occidental Chem. Corp.*, 561 S.W.3d at 161 (upholding a statute that altered which court reviewed a pending legal dispute over a retroactivity challenge); *Univ. of Tex. Sw. Med. Ctr. at Dall.*, 324 S.W.3d at 548 (upholding a statute imposing pre-suit jurisdictional requirement that a pending suit could not comply with over a retroactivity challenge); *Whittington*, 384 S.W.3d at 790 (upholding a statute banning takings for economic development to a pending lawsuit over a retroactivity challenge).

[67] *DeJoria*, 935 F.3d at 389 (quoting *Robinson*, 335 S.W.3d at 160 (Willett, J., concurring)).

[68] *See* United States District Court, Northern District of Texas, Local Rule 15.1 (requiring parties to request leave to amend, and to attach the proposed amended pleading).

acceptance letter from SMU (and it might be relevant if it promised in-person education).   But Hogan points to sample online acceptance letters that contain the same vague statements he references elsewhere in his complaint.   There is no indication from Hogan or otherwise that a chance to replead would let him add specificity he has not already found.  Second, Hogan's breach of contract claim would still have to be dismissed even if he could sufficiently re-plead and show that an implied-in-fact contract existed.[69]

Accordingly, the Court **DISMISSES WITH PREJUDICE** all of Hogan's claims.

**IT IS SO ORDERED** this 29th day of March, 2022.

_____

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[69] *See supra* n.18.

22